IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| AMY DEGIOANNI, *individually and on behalf of all those similarly situated*,<br><br>         *Plaintiff*,<br><br>v.<br><br>THE KROGER CORPORATION, *a Delaware corporation,*<br><br>         *Defendant*. | No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Amy Degioanni ("Plaintiff"), individually and on behalf of all other consumers similarly situated, by and through her undersigned counsel, hereby brings this action against The Kroger Corporation ("Kroger" or "Defendant") alleging that the following Products, which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and falsely advertised:

- Kroger's Fruit & Grain Cereal bars (strawberry, raspberry, mixed berry, apple cinnamon, and blueberry flavors); and

- Kroger's Vitamin (grape, strawberry watermelon, fruit punch, guava, blackberry citrus, berry pomegranate flavors); Refresh (peach tea, blackberry citrus, pineapple coconut flavors); and Energy (strawberry kiwi, acai flavors) water enhancers,

(collectively, the "Products"). Upon information and belief and investigation of counsel alleges as follows.

## PARTIES

1. Plaintiff Amy Degioanni is and at all times relevant was a citizen of the state of Texas, domiciled in Magnolia, Texas.

1

2.	Defendant The Kroger Corporation is a Delaware corporation with its principal place of business in Cincinnati, Ohio.

## JURISDICTION AND VENUE

3.	This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

4.	Plaintiff seeks to represent Class members who are citizens of states or countries different from the Defendant.

5.	The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

6.	In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

7.	In the alternative, the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 exclusive of interest and costs.

8.	This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

9.	Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including at least one Plaintiff; shipping the Products to commercial and individual consumers in this district, including at least one Plaintiff; knowingly directing advertising and marketing materials concerning the Products

into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers including Plaintiff have purchased the Products.

10. Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

11. Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

12. Plaintiff's losses and those of other Class members were sustained in this district.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

14. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

## FACTUAL ALLEGATIONS

**A.  Consumers Pay A Premium for "Clean Labels."**

15. Across the globe, consumers are increasingly attuned to claims that foods are "all-natural," minimally processed, or otherwise free of artificial flavors and preservatives.

16. For example, a 2018 survey by L.E.K. Consulting found that overwhelming numbers of consumers were committed or casual adherents to so-called "clean label" food attributes: "No artificial ingredients" (69 percent); "No preservatives" (67 percent); or "All-natural" (66 percent). These were the three most attractive attributes in the consumer survey.

Roughly 60 to 70 percent of consumers reported a willingness to pay a price premium for "clean label" foods. *See* https://www.lek.com/insights/ei/next-generation-mindful-food-consumption.

17. This consumer preference has led to an explosion in the category of "clean label" foods and beverages. Leading analyst Allied Market Research estimated that the "natural foods and drinks" category would grow by an estimated compound annual growth rate of 13.7 percent from 2016 to 2023, reaching $191 billion in annual sales by 2023. *See* https://www.alliedmarketresearch.com/natural-food-and-drinks-market.

18. Mrs. Degioanni purchased the raspberry, blueberry, and strawberry cereal bar Products on or about August 18, 2023 from a Kroger in Magnolia, Texas. She purchased the Refresh pineapple coconut flavor; Vitamin grape and fruit punch flavors; and Energy strawberry kiwi flavor liquid drink enhancers. Ms. Degioanni is a teacher and mother of four who attempts to avoid artificial flavors and ingredients in the foods she purchases for her and her family.

**B.      Defendant's Use of Synthetic Flavorings.**

19. The cereal Products' front labels state that these Products are "Naturally Flavored," with these statements reinforced by depictions of fruits:

 

4

20. Likewise, the drink enhancer Products state on the front label that the Products are flavored with "Natural Flavor With Other Natural Flavor," again with stylized depictions of fruits:



21. These statements are false and/or misleading. All of the Products contain a ingredient known as "malic acid."

22. While there is a naturally occurring form of malic acid, it is extremely expensive to formulate in large quantities and is almost never used in mass-produced food products. Instead, testing performed by an independent third-party laboratory has confirmed that the malic acid that Defendant uses in this flavor of the Products is DL malic acid, a synthetic substance derived from petrochemicals.[1]

---

[1] DL malic acid is also called d-hydroxybutanedioic acid or (R)-(+)-2-Hydroxysuccinic acid.

23. This type of malic acid is manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

24. Fruit flavors in a food are imparted by the interactions between sugars, acids, lipids, and various volatile compounds. The sweetness or tartness of a fruit flavor is determined by the ratio between the sugars (mainly glucose and fructose) and acids, such as malic acid.

25. The quality and consumer acceptability of fruit flavors is based on their perceived sweetness and tartness, which in turn is driven by the ratio between sugars and acids. Fruits have their own natural ratio of sugars and acids.

26. The DL malic acid used in the Products is used to create, simulate, and/or reinforce the sweet and tart taste that consumers associate with the fruit flavors stated on the labels.

27. Defendant uses the petrochemical-derived DL malic acid in the Products to create a sweet and tart flavor but pretends otherwise, conflating natural and artificial flavorings, misbranding the Products and deceiving consumers.

28. Federal regulations promulgated pursuant to the Food, Drug, and Cosmetic Act ("FDCA") require that a food's label accurately describe the nature of the food product and its characterizing flavors. 21 C.F.R. § 102.5(a).

29. Artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

30. Natural flavor is defined as "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the

6

flavoring constituents" from fruits or vegetables, "whose significant function in food is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

31. Any recognizable primary flavor identified directly or indirectly on the front label of a food product, whether by word, vignette, depiction of a fruit, or other means is referred to as a "characterizing flavor." 21 C.F.R. § 101.22.

32. If a food product's characterizing flavor is not created exclusively by the named flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either natural or artificial flavorings or both. If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the front label must prominently inform consumers that the product is "Artificially Flavored." 21 C.F.R. § 101.22(i)(2).

33. A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . . and consumers may otherwise be misled about the presence or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. § 102.5.

34. Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice.

35. By changing the ratio between sugars and acids that is naturally found in fruits, the DL malic acid used in the Products reinforces, simulates, or creates the characterizing flavors, regardless of any other effect it may have or purpose for which it was included.

36. DL malic acid is not a "natural flavor" as this term is defined by federal and state regulations and is not derived from a fruit or vegetable or any other natural source. The Products therefore contain artificial flavorings.

37. Because the Products contain artificial flavoring, federal regulations and corresponding state law incorporating and enacting those regulations require the Products to display both front- and back-label disclosures to inform consumers that the Products are artificially flavored.

38. The Products have none of the required disclosures regarding the use of artificial flavors.

39. Plaintiffs reserve the right to amend this Complaint to add further products that contain similar label misrepresentations as testing continues.

49. Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels.

50. Plaintiff reviewed the labels on the Products prior to her purchase, and reviewed the flavoring claims being made on those labels. Consumers such as Plaintiff who viewed the Products' labels reasonably understood Defendant's flavoring statements as described herein to mean that the Products contain only natural flavorings. These representations were false.

51. Consumers including Plaintiff reasonably relied on these label statements such that they would not have purchased the Products from Defendant if the truth about the Products was known, or would have only been willing to pay a substantially reduced price for the Products had they known that Defendant's representations were false and misleading.

52. In the alternative, because of its deceptive and false labelling statements, Defendant was enabled to charge a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace.

53. Consumers including Plaintiffs especially rely on label claims made by food product manufacturers such as Kroger, as they cannot confirm or disprove those claims simply by viewing or even consuming the Products.

54. Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiffs' injury.

55. All flavors of the two types of Products are sold for the same price, make the same misrepresentation regarding flavoring, are packaged in similar packaging, and are manufactured using the same base formulation. Ms. Degioanni therefore has standing to represent the purchasers of all flavors of the both types of Products, regardless whether she purchased each individual flavor of each Product.

## CLASS ACTION ALLEGATIONS

56. Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers in in the state of Texas who purchased the Products on or after August 18, 2019.

57. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

58. Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add Subclasses, as necessary to the full extent permitted by applicable law.

59. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

60. **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the state of Texas.

61. **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

   a. Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

   b. Whether a reasonable consumer would understand Defendant's label statements, as described herein, to indicate that the Products contained only natural flavorings, and reasonably relied upon those representations;

   c. Whether Defendant was unjustly enriched at the expense of the Plaintiffs and Class members;

   d. the proper amount of damages and disgorgement or restitution;

   e. the proper scope of injunctive relief; and

   f. the proper amount of attorneys' fees.

62. Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

63. In short, these common questions of fact and law predominate over questions that affect only individual Class members.

64. **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

65. Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

66. There are no defenses available to Defendant that are unique to the named Plaintiff.

67. **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

68. Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

69. **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

   a. the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible

  for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

c. the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d. the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

70. Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

71. Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Plaintiffs will be unable to rely on the Products' advertising or labeling in the future, and so will not purchase the Products although she would like to.

72. **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

73. Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

## COUNT 1
### VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
### TEX. BUS. & COM. CODE § 17.01 *et seq.*

74. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

75. Plaintiff has satisfied all prerequisites to suit, including demand of a sum certain in damages.

76. Plaintiff is a consumer, as defined under the Texas Deceptive Trade Practices Act ("TDTPA"), and relied upon the false, misleading, or deceptive acts or practices by Defendant, as set forth above, to her detriment.

77. Defendant's conduct violates the TDTPA by, *inter alia*, representing that goods have characteristics, ingredients, or benefits that they do not have; representing that goods are of a particular standard, quality, or grade, when they are of another; and advertising goods with intent not to sell them as advertised.

78. All of the above-described acts, omissions, and failures of Defendant are cause of an actual and proximate cause of Plaintiff's damages.

79. Because Defendant's actions and conduct as set forth herein were committed knowingly and intentionally, Plaintiff is entitled to recover, in addition to all damages described herein, mental anguish damages and additional penalty damages, in an amount not to exceed three times such actual damages, for Defendant having knowingly committed its conduct. Additionally, Plaintiff is ultimately entitled to recover damages in an amount not to exceed three times the

amount of mental anguish and actual damages due to Defendant having intentionally committed such conduct.

80.     As a result of Defendant's unconscionable, misleading, and deceptive actions and conduct as set forth herein, Plaintiff has been forced to retain the legal services of the undersigned attorney to protect and pursue these claims on his behalf. Accordingly, Plaintiff also seeks to recover her costs and reasonable and necessary attorneys' fees as permitted under Section 17.50(d) of the Texas Business & Commerce Code, as well as any other such damages to which Plaintiff may show herself to be justly entitled at law and in equity.

## COUNT 2
## UNJUST ENRICHMENT UNDER TEXAS LAW

81.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

82.     Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers regarding the flavoring in the Products.

83.     Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

84.     Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

85.     Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

86.     Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

87. Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

88. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

## COUNT 3
## BREACH OF EXPRESS OR IMPLIED WARRANTY
## TEX. BUS. & COM. CODE §§ 17.46, 17.50

89. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

90. Plaintiff has satisfied all prerequisites to suit, including demand of a sum certain in damages.

91. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products contained only natural flavors.

92. Defendant's express warranties, and its affirmations of fact and promises made to Plaintiff and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, which creates an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

93. The Products do not conform to the express warranty as set forth herein.

94. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural

ingredients; (b) they paid a price premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a. Certifying the Class;

b. Declaring that Defendant violated the TDTPA and/or was unjustly enriched and/or violated an express or implied warranty;

c. Awarding actual and other damages as permitted by law, and/or ordering an accounting by Defendant for any and all profits derived by Defendant from the conduct alleged herein;

d. Ordering an awarding of injunctive relief, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

e. Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff;

f. Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g. Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

February 13, 2024