United States District Court
Southern District of Texas
**ENTERED**
November 05, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

AMY DEGIOANNI, *individually and on behalf of all those similarly situated.*,

§
§
§
§
§
§
§
§
§
§
§
§
§
§

       *Plaintiff,*

vs.

THE KROGER CORPORATION,

       *Defendant.*

NO. 4:24-cv-00528

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON DEFENDANT'S MOTION TO DISMISS

Before the Court is The Kroger Corporation's ("Defendant") motion to dismiss Plaintiff's complaint under Rules 12(b)(1) and (6). Mot. Dismiss Compl., ECF No. 10.[1] Plaintiff filed this Texas-wide class action based on allegedly misleading labels on Defendant's fruit and grain cereal bars and water enhancers, asserting claims for misrepresentation and unconscionability under Texas's Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COMM. CODE § 17.46, as well as unjust enrichment, and breach of express and implied warranties under Texas state law. Pl.'s Compl., ECF No. 1. Defendant asserts that Plaintiff lacks standing

---

[1] The district judge to whom this case is assigned referred this motion in accordance with 28 USC § 636(b). Order, ECF No. 13. A motion to dismiss is a dispositive motion appropriate for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(A); *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 763 (5th Cir. 2016).

because she cannot bring claims for products she never purchased and fails to state a claim for relief because she does not adequately allege reliance, deception, and unconscionability, as required under her asserted claims. In response, Plaintiff argues that her complaint is sufficient to establish her standing to pursue these claims and put Defendant on notice, and therefore, the motion should be denied. Pl.'s Resp., ECF No. 11.[2]

Based on a review of the complaint and indulging all inferences in favor of Plaintiff, the Court concludes that the motion to dismiss has merit regarding Plaintiff's implied warranty claims, claims for injunctive relief, and DTPA claims related to the water enhancer products, but lacks merit as to the remaining claims. Therefore, the Court recommends that the motion to dismiss should be granted in part and denied in part. Further, because individualized issues of reliance predominate, the motion to strike class allegations should be granted. Finally, because Plaintiff's pre-suit notice is deficient, the Court recommends that Defendant's plea in abatement be granted.

## I.    BACKGROUND

Plaintiff brought this action individually and on behalf of all others similarly situated who purchased Defendant's fruit and grain cereal bars and water enhancers (collectively, the "Products"). ECF No. 1 at 1. Plaintiff complains that the Products

---

[2] Defendant also filed a reply. ECF No. 12.

are mislabeled and falsely advertised because although marketed as "Naturally Flavored" or "Natural Flavor With Other Natural Flavor" with pictures of fruit, the Products are flavored with synthetic malic acid. ECF No. 1 ¶¶ 19, 20, 21, 26, 27. Plaintiff contends that although there is a naturally occurring form of malic acid, the malic acid in the Products is DL malic acid, "a synthetic substance derived from petrochemicals." ECF No. 1 ¶ 22. Plaintiff describes the differences between the natural and synthetic malic acids and notes that because naturally occurring malic acid is expensive typically it is not used in mass-produced products. ECF No. 1 ¶¶ 22–27. Plaintiff alleges that "testing performed by an independent third-party laboratory" confirmed that Defendant uses DL malic acid in the Products. ECF No. 1 ¶ 22. Plaintiff explains that Defendant's use of DL malic acid "to create a sweet and tart flavor but pretends otherwise, conflating natural and artificial flavorings, misbranding the Products and deceiving consumers." ECF No. 1 ¶ 27. "Because the Products contain artificial flavoring, federal regulations and corresponding state law incorporating and enacting those regulations require the Products to display both front and back label disclosures to inform consumers that the Products are artificially flavored." ECF No. 1 ¶ 37.

Plaintiff alleges that consumers, like herself, pay a premium for "clean label" foods, such as all natural, minimally processed, or food otherwise free of artificial flavors and preservatives. ECF No. 1 ¶¶ 15, 52. Plaintiff "is a teacher and mother of

four who attempts to avoid artificial flavors and ingredients in the foods she purchases for her[self] and her family." ECF No. 1 ¶ 18. On or about August 18, 2023, Plaintiff purchased the raspberry, blueberry, and strawberry cereal bar Products, and the Refresh pineapple coconut, Vitamin grape, Vitamin fruit punch, and Energy strawberry-kiwi flavored liquid water enhancers from a Kroger in Magnolia, Texas. ECF No. 1 ¶ 18. Plaintiff reviewed the Product's labels and believed "Naturally Flavored" and "Natural Flavors" to mean the Products contained only natural flavors and relied on that understanding, which was false. ECF No. 1 ¶¶ 50, 51. Plaintiff explains that "DL malic acid is not a 'natural flavor' as this term is defined by federal and state regulations and is not derived from a fruit or vegetable or any other natural source. The Products therefore contain artificial flavorings." ECF No. 1 ¶ 36. Plaintiff alleges that she suffered economic injury by paying more for the Products based on Defendant's fraudulent and deceptive conduct. ECF No. 1 ¶ 54.

Plaintiff raises three claims: (1) a knowing or intentional violation of the DTPA; (2) unjust enrichment; and (3) breach of express or implied warranty under TEX. BUS. & COMM. CODE §§ 17.46, 17.50. ECF No. 1. In addition to damages, Plaintiff requests injunctive relief, "including enjoining Defendant from continuing the unlawful practices . . . and ordering Defendant to engage in a corrective advertising campaign." ECF No. 1 at 16.

In its motion to dismiss, Defendant makes numerous arguments: (1) Plaintiff failed to plead reliance; (2) Plaintiff failed to plead deception; (3) Plaintiff's DTPA claim fails for the flavors not pictured in the complaint; (4) Plaintiff failed to plead unconscionability; (5) Plaintiff did not plead any implied warranty; (6) Plaintiff failed to state a claim for unjust enrichment; (7) Plaintiff is not entitled to injunctive relief; and (8) Plaintiff may not bring claims for products she did not purchase. *See* ECF No. 10. In the alternative, Defendant asks the Court to strike the class allegations and/or abate the lawsuit for Plaintiff's failure to comply with pre-suit notice under the DTPA. *See id.*

## II.    THE LEGAL STANDARD FOR A MOTION TO DISMISS

### A.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). If a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court considers the jurisdictional attack under Rule 12(b)(1) before addressing the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding a Rule 12(b)(1) motion, the Court considers: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Williams v. Steward Health Care Sys., LLC*, No. 5:20-

CV-00123-RWS-CMC, 2022 WL 575939, at *5 (E.D. Tex. Feb. 25, 2022) (quoting *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996))). The Court accepts all well-pleaded allegations set forth in the complaint as true and construes them in the light most favorable to the plaintiff. *Id.* (citing *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994)). The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the plaintiff cannot prove a plausible set of facts to support a claim that would entitle her to relief. *Id.* (citing *Lane*, 529 F.3d at 557).

Under Article III of the Constitution, a plaintiff seeking redress in federal court has the burden of proving that she has standing, meaning she is "entitled to have the court decide the merits of the dispute or of particular issues." *Singh v. RadioShack Corp.*, 882 F.3d 137, 150–51 (5th Cir. 2018) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Standing must be decided before determining the merits. *Id.* at 151 (citing *Warth*, 422 U.S. at 498). To prove standing, a plaintiff must "allege[:] (1) an injury that is (2) 'fairly traceable to the defendant's allegedly unlawful conduct,' and that is (3) 'likely to be redressed by the requested relief.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984))). Further, a plaintiff must not "rais[e] another person's legal rights." *Id.* (quoting *Lexmark Int'l, Inc. v. Static Control Components,*

6

*Inc.*, 572 U.S. 118 (2014)). These standing requirements are equally applicable in class actions. *Singh*, 882 F.3d at 151. That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class . . . which they purport to represent." *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (internal quotations and citations omitted in *Singh*)).

### B.    Rules 12(b)(6) and 9(b)

Under Rule 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Poe*, 2018 WL 4275839, at *2 (quoting FED. R. CIV. P. 8(a)(2)). Rule 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted." *Id.* (quoting FED. R. CIV. P. 12(b)(6)). As with a Rule 12(b)(1) motion, the Court accepts well-pleaded facts as true and construes them in the light most favorable to the plaintiff on a Rule 12(b)(6) motion. *Id.* (citing *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012)). The Court rejects "'[c]onclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)).

If the complaint's facts accepted as true state a claim to relief that is plausible on its face, then the complaint will survive a motion to dismiss. *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). To meet the "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "an unadorned, the-defendant-unlawfully-harmed-me accusation" are insufficient. *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678.

"[C]laims for fraud must state more than facts sufficient to make a plausible claim to relief[:] they must meet the Rule 9(b) pleadings standard." *Wheeler v. JP Morgan Chase Bank, Nat'l Ass'n*, Civil Action No. H-15-117, 2015 WL 1758071, at *3 (S.D. Tex. Apr. 17, 2015). Under Rule 9(b), a plaintiff must set forth the who, what, when, where, and how of the alleged fraud. FED. R. CIV. P. 9(b); *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010); *see also Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002) ("This Court interprets Rule 9(b) strictly, requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.")). "This heightened pleading standard applies to the fraud and DTPA claims [Plaintiff] asserts in this case." *See Sharifan v. NeoGenis Labs, Inc.*, 622 F. Supp. 3d 478, 487 (S.D. Tex. 2022) (citing *SHS Inv. v. Nationwide Mut. Ins. Co.*,

798 F. Supp. 2d 811, 815 (S.D. Tex. 2011) ("causes of action arising under DTPA . . . or common law fraud must satisfy Rule 9(b)")).

## III. PLAINTIFF ADEQUATELY ALLEGES STANDING.

Defendant contends that Plaintiff lacks standing to bring class claims for flavors she did not purchase. ECF No. 10 at 18. The Court addresses this argument first. *See Ramming*, 281 F.3d at 161 (a court should consider the 12(b)(1) jurisdictional attack before addressing other Rule 12 motions).

In her complaint, Plaintiff brings consumer claims and seeks to represent a Texas-only class of individuals who purchased Defendant's fruit and grain cereal bars and water enhancers. ECF No. 1 ¶ 56. While Plaintiff admits to only purchasing the raspberry, blueberry, and strawberry cereal bars and Refresh pineapple coconut, Vitamin grape, Vitamin fruit punch, and Energy strawberry kiwi flavored water enhancers, she seeks to represent consumers who purchased those flavors and the other flavors she did not purchase. ECF No. 1 ¶¶ 18, 55. Plaintiff alleges that she may represent the consumers of flavors she did not purchase because "[a]ll flavors of the two types of Products are sold for the same price, make the same misrepresentation regarding flavoring, are packaged in similar packaging, and are manufactured using the same base formulation." ECF No. 1 ¶ 55. Plaintiff contends that all class members, purchasers of the Products, "were harmed in the same way

9

due to Defendant's uniform misconduct," and "all suffered similar economic injury due to Defendant's misrepresentations." ECF No. 1 ¶ 65.

To establish Article III standing at this stage, Plaintiff must allege facts demonstrating that she: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Franklin v. Apple Inc.*, 569 F. Supp. 3d 465, 473 (E.D. Tex. 2021) (citing *Lujan*, 504 U.S. at 560). If one named plaintiff in a class action meets the three requirements, then standing is met. *Id.* (citing *Simon*, 426 U.S. at n.20).

As noted in *Franklin v. Apple*, there is a split of authority regarding whether a plaintiff can bring class action claims on behalf of consumers who purchased similar, but not identical products—the Fifth Circuit has not weighed in on this matter. *See id.* (citing *Donohue v. Apple, Inc.*, 871 F.Supp.2d 913, 921 (N.D. Cal. 2012) (collecting cases)). The *Franklin* court explained that courts that have decided this issue take one of three approaches:

> Some federal courts have held, as a matter of law, that a plaintiff lacks standing to assert such claims. *See, e.g., Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."). Another group of courts have adopted a middle-ground position, in which "the critical inquiry seems to be whether there is sufficient similarity between the products purchased and [those] not purchased." *See, e.g., Astiana v. Dreyer's Grand Ice Cream, Inc.*, 11–cv–2910–

EMC, 2012 WL 2990766, at * 11 (N.D. Cal. July 20, 2012). A third
group of courts have held that the standing inquiry is more
appropriately resolved on a motion for class certification. *See, e.g.,
Forcellati v. Hyland's, Inc.*, 876 F.Supp.2d 1155, 1161 (C.D. Cal.
2012) ("[The] argument is better taken under the lens of typicality or
adequacy of representation, rather than standing.").

*Id.* Most courts utilize the substantial similarity test. *See id.* at 474–75 (citing *Richey*

*v. Axon Enterprises, Inc.,* 437 F. Supp. 3d 835, 843 (D. Nev. 2020); *Astiana*, 2012

WL 2990766, at *11; *Anderson v. Jamba Juice*, 888 F. Supp. 2d 1000, 1005–06

(N.D. Cal. 2012); *Donohue*, 871 F. Supp. 2d at 922).

In utilizing this approach, courts consider factors such as "similarity in

products, similarity in claims, similarities in injury to consumers." *Id.* at 475

(quoting *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2014 WL

1024182, at *6 (N.D. Cal. Mar. 13, 2014)). In *Franklin*, the court utilized the

substantial similarity test to find that the plaintiff had standing to bring class claims

for a series of iPhone models, including some the plaintiff did not purchase or own.

*Id.* at 475–76. Like in *Franklin*,[3] the Court finds the substantially similar test

appropriate to determine whether Plaintiff has standing at this stage.

---

[3] The *Franklin* court listed its reasons for accepting this approach, noting that this approach:
(1) strikes a balance between deciding this inquiry as a matter of standing or a matter of class
certification; and (2) allows courts to ensure that a plaintiff only represents individuals who have
essentially suffered the same injury as plaintiff, but does not narrowly draw "injury" to only
include the same set of circumstances—instead, leaving material differences in the products to be
addresses at class certification where the court can better determine whether the class
representative can adequately represent individuals who purchased "similar" products. *See
Franklin*, 569 F. Supp. 3d at 475 (citing *Gratz v. Bollinger*, 539 U.S. 244, 263, 263 n.15 (2003);

Utilizing this test, the Court finds that Plaintiff's allegations meet the substantial similarity test. In *Franklin*, the court found this test was met because the plaintiff claimed that each model allegedly had the same defect and "alleged numerous instances where the [unpurchased] models had been defective in the same way as [the purchased model]." *Id.* at 476. The court also noted that the plaintiff alleged that Apple misrepresented the known defect in all models and pointed to allegedly false statements made about the purchased and unpurchased models. *Id.* The plaintiff was not asserting standing to sue over injuries he did not suffer, but instead asserted that he suffered the same injuries from buying the phone that other unnamed class members suffered as a result of their phone purchases. *See id.*

Here, Plaintiff asserts that the cereal bars have labels that they are "Naturally Flavored" and feature pictures of fruit, ECF No. 1 ¶ 19, and the water enhancers are labeled "Natural Flavor with Other Natural Flavor" and feature pictures of fruit, ECF No. 1 ¶ 20. Plaintiff alleges that prior to her purchase, she reviewed the labels containing these flavoring claims. ECF No. 1 ¶ 50. Plaintiff asserts that these statements are false and misleading because all Products contain DL malic acid, an artificial flavor. ECF No. 1 ¶¶ 21, 27, 36. As in *Franklin*, Plaintiff is not asserting standing to sue over injuries she did not suffer, but instead asserts that she suffered

---

*Brazil v. Dole Food Co.*, No. 12-CV-01831-LHK, 2013 WL 5312418, at *7 (N.D. Cal. Sept. 23, 2013); *Astiana*, 2012 WL 2990766 at *13). The Court finds these reasons equally persuasive.

the same injuries as other purchasers of the Products. *See Franklin*, 569 F.Supp.3d at 476. Her allegations demonstrate that she challenges the same kind of product: Defendant's cereal bars and drink enhancers, and same product labels: "Naturally Flavored" and "Natural Flavor With Other Natural Flavor," as those others purchased. Further, Plaintiff asserted that each Product contained DL malic acid, an artificial flavor. The Court finds Plaintiff has adequately pleaded substantial similarity between the Products she purchased and did not purchase to defeat Defendant's motion to dismiss. *See id.*[4]

Defendant's arguments to the contrary, *i.e.*, that other labels and pictures on the Products vary and convey different messaging about the Products' flavor compositions, are unavailing. *See Astiana*, 2012 WL 2990766, at *13 (the court found that the plaintiffs had alleged sufficient similarity between the products they purchased and those they had not where "Plaintiffs [were] challenging the same kind of food products (*i.e.,* ice cream) as well as the same labels for all of the products. . . and noted that "the different ice creams may ultimately have different ingredients is not dispositive as Plaintiffs are challenging the same basic mislabeling practice

---

[4] Defendant also briefly argues that Plaintiff failed to establish DTPA standing for unpurchased flavors because she does not qualify as a "consumer" and so she should not be permitted to proceed with her DTPA and implied warranty claims for unpurchased flavors. ECF No. 10 at 27. This argument is unsupported—the cases Defendant cited did not address a class action representative's consumer status related to unpurchased goods. *See Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 724 (5th Cir. 2013), *Strickland v. Bank of New York Mellon*, 838 F. App'x 815, 819 (5th Cir. 2020), *Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 491 (5th Cir. 1999). This argument is waived. *See* LR 7.1B ("Opposed motions shall . . . include or be accompanied by authority.").

across different product flavors."). Defendant's cited authority is inapposite—Plaintiff's claims contain two kinds of Products with two "Natural Flavor" labels on the packaging, not hundreds of products with misrepresentations ranging from local in-store representations to product labels. *See e.g., Gedalia v. Whole Foods Mkt. Services, Inc.*, 53 F. Supp. 3d 943, 947–48 (S.D. Tex. 2014) (although it did not decide the case on this issue, the court found that the plaintiffs likely did not meet the substantially similar test because their claims encompassed hundreds of different products and "[s]ome claims involve[d] local in-store representations that are not on actual product labels.").

The motion to dismiss should be denied as to the standing argument.

## IV.    DEFENDANT'S MOTION TO DISMISS SHOULD BE GRANTED IN PART AND DENIED IN PART.

### A.    Plaintiff's DTPA Claims Regarding the Water Enhancer Products are Deficient.[5]

"The purpose of the DTPA is to 'protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty

---

[5] As an initial matter, the Court notes that although some of the cases relied on throughout this report and recommendation addressed different state laws, these out-of-state laws are substantively similar to Texas law. *See Lozano v. Walmart, Inc.*, No. CV 23-4500-SPG-MAR, 2024 WL 412606, at *10 (C.D. Cal. Feb. 1, 2024) (reasonable consumer test applies to false advertising claims brought under the UCL, FAL, and CLRA)); *McCall v. Publix Super Markets, Inc.*, No. 8:22-CV-584-MSS-CPT, 2023 WL 2362542, at *5 (M.D. Fla. Feb. 28, 2023) (reasonable consumer test applies to consumer protection claims under Florida law; *Gouwens v. Target Corp.*, No. 3:22-CV-50016, 2022 WL 18027524, at *4 (N.D. Ill. Dec. 30, 2022) (reasonable consumer test applies to ICFA claims under Illinois law).

and to provide efficient and economical procedures to secure such protection.'"

*Drywall Elements, LLC v. Edward Wolff & Associates, LLC*, No. 4:21-CV-00537-CAN, 2022 WL 4667997, at *10 (E.D. Tex. Sept. 30, 2022) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W. 2d 644, 649 (Tex. 1996) (quoting Tex. Bus. & Comm. Code § 17.44)).

The DTPA elements are: (1) Plaintiff is a consumer;[6] (2) Defendant either: (a) engaged in false, misleading, or deceptive acts specifically enumerated as a "laundry-list" provision of the DTPA or for breach of a warranty, (b) engaged in an unconscionable action or course of action,[7] or (c) violated a "tie-in" statute; and (3) the violation or unconscionable action was a producing cause of Plaintiff's injury. *See id.* (citing *Amstadt*, 919 S.W.2d at 649; *Franklin v. Apple Inc.*, No. 4:21-CV-354-ALM, 2021 WL 4989952, at *8 (E.D. Tex. Oct. 27, 2021); *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 822 (Tex. 2012)).

A material misrepresentation is actionable under the DTPA. *Jones v. Zearfoss*, 456 S.W.3d 618, 623 (Tex. App.—San Antonio 2015, no pet.) (citing *Miller v. Keyser,* 90 S.W.3d 712, 716 (Tex. 2002)). "A fact is material if it would likely affect

---

[6] A consumer is an individual or an entity "who seeks or acquires by purchase or lease, any goods or services." Tex. Bus. & Com. Code § 17.45(4). This element is not under dispute. *See* ECF Nos. 10, 11.

[7] Defendant argued that Plaintiff failed to state a claim for unconscionability. ECF No. 10 at 10, 23. Plaintiff responded that she does not plead or otherwise pursue a claim for unconscionable conduct. ECF No. 11 at 14, n. 2.

the conduct of a reasonable person concerning the transaction in question." *Id.*
(quoting *Fleming v. Curry,* 412 S.W.3d 723, 736 (Tex. App.—Houston [14th Dist.]
2013, pet. denied)). Materiality depends on whether a "reasonable person would
attach importance to and would be induced to act on the information in determining
his choice of actions in the transaction in question." *Id.* (quoting *Fleming,* 412
S.W.3d at 737 (citing *Am. Med. Int'l, Inc. v. Giurintano,* 821 S.W.2d 331, 338 (Tex.
App.—Houston [14th Dist.] 1991, no writ) (op. on reh'g))).

### 1. *Plaintiff's Complaint Sufficiently Alleged the Products Are Artificially Flavored.*

Defendant first argues that Plaintiff insufficiently alleged that Defendant used
artificial malic acid to flavor the Products. Specifically, Defendant asserts that "the
Complaint pleads, without specifying which flavor it refers to, that 'testing
performed by an independent third-party laboratory has confirmed that the malic
acid that Defendant uses in this flavor of the Products is DL malic acid a synthetic
substance derived from petrochemicals.'" ECF No. 10 at 16. Defendant contends
that Plaintiff's allegation "omits who performed the testing, when testing occurred,
or even *which* of the 16 flavors she tested," and is, therefore, deficient. ECF No. 10
at 17.

Plaintiff pleaded "Defendant's conduct violates the []DTPA by, inter alia,
representing that goods have characteristics, ingredients, or benefits that they do not
have; representing that goods are of a particular standard, quality, or grade, when

they are of another; and advertising goods with intent not to sell them as advertised." ECF No. 1 ¶ 77. Plaintiff alleges two misrepresentations: "naturally flavored" and "natural flavors with other natural flavors." Plaintiff contends that these representations are false because the Products are flavored with DL malic acid. ECF No. 1 ¶¶ 21, 22.

Although Defendant cites several cases holding that allegations like Plaintiff's are insufficient, conclusory, and amount to no more than amorphous laboratory analyses of unspecified flavors, *see e.g., Scheibe v. Performance Enhancing Supplements, LLC*, No. 3:23-CV-00219-H-DDL, 2023 WL 3829694, at *3 (S.D. Cal. June 5, 2023) and *Hoffman v. Kraft Heinz Foods Co.*, No. 22-CV-397 (KMK), 2023 WL 1824795, at *8 (S.D.N.Y. Feb. 7, 2023), the Court finds that Defendant's arguments require more than what is necessary at the pleading stage, *see Gouwens*, 2022 WL 18027524, at *2 (rejecting defendant's argument that plaintiff failed to plausibly allege that the drink enhancement product contains DL malic acid because she did not describe the testing methodology of the lab as "misplaced at the pleading stage and requiring more would exceed federal pleading standards.") (citing *Iqbal*, 556 U.S. at 678; *Herron v. Meyer*, 820 F.3d 860, 863 (7th Cir. 2016) ("[A] complaint narrates a claim and need not supply the proof.")); *McCall*, 2023 WL 2362542, at *4 (rejecting Defendant's argument that "absent allegations describing the testing methodology followed, the specific date, time, or place of the testing, who conducted

17

the testing, the qualifications of the testers, etc., Plaintiff has insufficiently alleged the ingredients of the Product.") (cleaned up) (citing *Gouwens*, 2022 WL 18027524, at *2).

Throughout her complaint, Plaintiff alleges that Defendant uses DL-malic acid in all of the Products and that "testing by an independent third-party laboratory" confirmed that the "malic acid" listed in the Products is DL-malic acid, and also explains how DL-malic acid is manufactured and used in the Products and why it is used in mass-produced food products—namely, that naturally occurring malic acid is expensive and rarely used in mass produced foods. ECF No. 1 ¶¶ 22, 23, 26, 27, 35, 36, 37.

At this stage in the proceedings, Plaintiff's allegations are sufficient to meet federal pleading standards. *See Noohi v. Kraft Heinz Co.*, CV 19-10658 DSF (SKx), 2020 WL 5554255, at *2–3 (C.D. Cal. July 20, 2020) (the court rejected imposing a requirement that the plaintiff identify how she discovered the products contained DL malic acid, and instead found that the plaintiff adequately pleaded that the products contained DL-malic acid when it explained the difference between the two types of malic acid and alleged that DL-malic acid was used in the products) (citing *Branca v. Bai Brands, LLC*, No. 3:18-cv-00757-BEN-KSC, 2019 WL 1082562, at *3 (S.D. Cal. Mar. 7, 2019) (rejected a similar argument, finding it sufficient for the plaintiff to allege that "Defendants use an artificial petrochemical, d-1-malic acid in their

Products" and to "discuss[ ] with particularity how artificial malic acid is created, is used in beverage products like Bai, and why Defendants use d–1–malic acid in place of natural malic acid."); *Marotto v. Kellogg Co.*, No. 18 CIV. 3545 (AKH), 2018 WL 10667923, at *7 (S.D.N.Y. Nov. 29, 2018) (finding it sufficient that "Plaintiff distinguishes the natural and artificial forms of the ingredients and alleges that the Product contains the latter form"); *Allred v. Kellogg Co.*, No. 17-CV-1354-AJB-BLM, 2018 WL 1158885, at *2 (S.D. Cal. Feb. 23, 2018) (concluding that allegations "discuss[ing] the process to create artificial malic acid and ... defendants['] use the artificial version of malic acid, 'd-l-malic acid,' in the product" was sufficient at the motion to dismiss stage because "the allegation's truthfulness is a summary judgment hurdle").[8]

The motion to dismiss should be denied as to whether the complaint sufficiently alleged that the Products are artificially flavored.

### 2.    *Plaintiff Sufficiently Alleged "Naturally Flavored" Was Misleading.*

Plaintiff alleges that coupled with depictions of fruit on the Products' labels, reasonable consumers "would read Kroger's 'Naturally Flavored' and 'Natural Flavors With Other Natural Flavors' claims to mean that the Products were only

---

[8] Defendants too try to read in a similar requirement, demanding to know extensive details about the mentioned laboratory testing. The Court finds this inquiry to be more appropriate for discovery requests and not reason to find Plaintiff's allegations insufficient. Plaintiff's "'assumption as to the type of malic acid contained in Defendant['s] Products ultimately may be incorrect,' but at the pleading stage the allegations must be accepted as true." *Noohi*, 2020 WL 5554255, at *2 (quoting *Branca*, 2019 WL 1082562, at *3).

flavored naturally, and not with synthetic ingredients such as DL malic acid." *See* ECF Nos. 1 ¶¶ 19, 20, 21, 26, 50, 51, 61; 11 at 18. Defendant contends that the Products' labels only contain true information because they do contain natural flavoring and do not represent that they are free of artificial flavoring and no reasonable consumer would find a mass-produced, shelf-stable product like those here would be free of artificial ingredients. ECF No. 10 at 18, 20. Given the different alleged misrepresentations, the Court separates its analysis between the cereal bars and the water enhancers.

### a.    "Naturally Flavored" Cereal Bars

The Court finds the case of *Lozano v. Walmart* to be instructive here. *See Lozano*, 2024 WL 412606, at *1-2. In *Lozano*, the court considered nearly identical arguments, allegations, and products as those before the Court. First considering Walmart's cereal bars, the court found that the boxes featuring pictures of fruit and the statements "real fruit" and "naturally flavored" were sufficient to survive a motion to dismiss. *Id.* at *10. The court included the below picture of the box:



*Id.* Likening the case to *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008),[9] the Court held:

> these labels are materially similar to a label for which the Ninth Circuit found dismissal to be inappropriate. In *Williams*, the Ninth Circuit reversed a dismissal when the district court [] dismissed a claim involving a label stating the snacks were "[m]ade with real fruit juice and all other natural ingredients," were "naturally flavored," and featured pictures of real fruit, when the ingredients on the side of the box expressly included artificial ingredients. Accordingly, the Court agrees with Plaintiff, insofar as she argues that she has alleged enough at this stage of the proceedings, and that these claims should proceed to be tested in discovery and motion practice.

*Id.* (citing *Gerber*, 552 F.3d at 936–37).

Here, Plaintiff included the below pictures for visual examples of their allegations:



ECF No. 1 ¶ 19. The above images are substantially similar to those considered in *Lozano*. The labels on the cereal bar products contain statements that the product is

---

[9] In *Gerber*, the court found Gerber's packaging of fruit juice snacks could likely deceive a reasonable consumer, namely the name of the product: "fruit juice snacks," the pictures of different fruits suggesting their presence in the product, and the statements that the product was nutritious and made with "fruit juice and other all natural ingredients." *Id.*

"naturally flavored," which is "reinforced by depictions of fruit" and statements that the product is "made with real fruit." ECF No. 1 ¶ 19; *see Lozano*, 2024 WL 412606, at 10-11. Like in *Lozano* and *Gerber*, the Court finds that Plaintiff has sufficiently alleged that "naturally flavored" on the cereal bar boxes is misleading to a reasonable consumer. *See Lozano*, 2024 WL 412606, at *10–11; *Gerber Products Co.*, 552 F.3d at 939.

The motion to dismiss should be denied as to whether "Naturally Flavored" was misleading.

**b.    "Natural Flavor With Other Natural Flavors" Water Enhancers**

The Court continues to find *Lozano*'s reasoning instructive in considering the allegations regarding the water enhancer products. In *Lozano*, the court considered water enhancers labeled with the statement "natural flavor with other natural flavor," and featuring pictures of realistic-looking fruit:



*Lozano*, 2024 WL 412606, at *11. The court found that the plaintiff's allegations failed to plausibly allege that a reasonable consumer would be deceived by the water

enhancers' labels. *Id.* The court first noted that these products were pre-packaged, brightly-colored, mass-market water enhancers sold at a superstore that were shelf-stable and did not require refrigeration. *Id.* The court then found that that labels' statement, "natural flavor with other natural flavors" did not amount to an "absolute statement" that all the flavors were natural or fall in the same category as the sentiment conveyed by the cereal bars' labels that the bars were "naturally flavored." *Id.* And finally, the court found that the fruit pictures were no more than a visual representation of the taste or flavor of the product. *Id.* The court concluded, "while a reasonable consumer may believe from the labels that the Products contain some natural flavors, based on the context, it would not be reasonable for a consumer to think that the Products contained *only* natural flavors." *Id.*[10]

Here, Plaintiff alleges that the labels of the water enhancers denote that these Products are flavored with "Natural Flavor With Other Natural Flavor," and are again reinforced by "stylized depictions of fruits." ECF No. 1 ¶ 20.

---

[10] Several other courts have reached the same conclusion about drink enhancers' label of "natural flavor with other natural flavors" for the same or similar reasons. *See Boss v. Kraft Heinz Co.*, 690 F. Supp. 3d 912, 915 (N.D. Ill. 2023), *appeal dismissed*, No. 23-2966, 2024 WL 1521251 (7th Cir. Feb. 5, 2024); *Gouwens*, 2022 WL 18027524, at *3–4. The Court does not follow the reasoning in *McCall*, 2023 WL 2362542, at *5, a case Plaintiff proffered. In *McCall*, the court found "natural flavor with other natural flavors" water enhancers to be misleading, drawing a distinction between artificially flavored products and products merely containing artificial ingredients. *Id.* As an initial matter, the product described in *McCall* featured pictures of fruit, *id.* at *4, but even so, the Court finds that the distinction between products containing artificial ingredients and artificially flavored products is irrelevant here because Plaintiff alleged that she "attempts to avoid artificial flavors *and* ingredients in food," not that she only avoids artificial flavoring. ECF No. 1 ¶ 18 (emphasis added).



*Id.* The Court finds, like in *Lozano*, the statement "natural flavor with other natural flavors" does not amount to a representation that the Products were free of artificial flavoring or that their flavoring was natural. Furthermore, these products are mass-produced, shelf-stable, and sold at a major retailer. ECF No. 1 ¶¶ 18, 53. [11] Finally, unlike in *Lozano*, the graphics on these Products do not realistically depict fruit— the Court fails to see even a "stylized depiction" as Plaintiff puts it, but rather blobs of the fruit's color. In sum, Plaintiff's allegations fail to plausibly allege that a reasonable consumer would be deceived by the water enhancers' labels. *Lozano*, 2024 WL 412606, at *11.

The motion to dismiss should be granted as to Plaintiff's claims based on the

---

[11] With regard to the deceptiveness of the label, Defendant argues that any claim based on a violation of the federal regulations is preempted. ECF No. 10 at 22. Plaintiff clarifies that she does not raise a claim based on Defendant's purported violation of FDA regulations, but rather includes allegations regarding the regulatory background of food labelling to demonstrate that an ordinary consumer's expectations are shaped by such regulations. ECF No. 11 at 22 ("Kroger's violation of this and other federal regulations cited in the Complaint is *'evidence of breach' of the state law duty not to make deceptive statements created by the DTPA*, precisely because consumers come to rely on manufacturers' compliance with federal law in making their decisions about what to buy.") (emphasis added). Accordingly, the Court need not address Defendant's preemption arguments.

water enhancer products.

### B.      Plaintiff's Allegations Satisfy Rule 9(b)'s Pleading Requirements.

A plaintiff asserting a claim for a false, misleading, or deceptive act, must plead sufficient facts to support the reasonable inference that she relied to her detriment on the deceptive act. *See Kerr v. Lambert*, No. 03-19-00359-CV, 2020 WL 6266005, at *3 (Tex. App.—Austin Oct. 23, 2020, no pet.) (citing *Cruz*, 364 S.W.3d at 823). As noted above, "[i]n federal court, certain claims under the DTPA are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *Franklin*, 569 F. Supp. 3d at 478 (citing *Weidner v. Nationwide Prop. & Cas. Ins. Co.*, No. 4:13-CV-263, 2014 WL 8397281, at *5 (E.D. Tex. June 6, 2014); *Omni USA, Inc. v. Parker–Hannifin Corp.*, 798 F.Supp.2d 831, 836 (S.D. Tex. 2011); *Berry v. Indianapolis Life Ins. Co.,* 608 F.Supp.2d 785, 800 (N.D. Tex. 2009)). So, a plaintiff must plead the "who, what, when, where, and how" of the fraud. *Id.* (citing *Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005)).

Defendant argues that "[n]one of [Plaintiff's] claims can succeed because she does not allege any *facts* supporting her bare conclusion that she relied on labels for unspecified flavors of Cereal Bars and Water Enhancers." ECF No. 10 at 13 (emphasis in original). Specifically, Defendant asserts that Plaintiff failed to specify which labels she reviewed and relied upon before purchasing, what "flavoring

claims" she relied on, or when this occurred other than that it was before purchase. ECF No. 10 at 15. Plaintiff responds that her allegations as a whole demonstrate detrimental reliance under Rule 9(b), and delineates:

- *Who* (the Plaintiff, Mrs. Degioanni);
- *When* (just prior to her purchase on August 18, 2023);
- *Where* (a Kroger in Magnolia, Texas);
- *What* (the raspberry, blueberry, and strawberry cereal bars; and the Refresh pineapple coconut; Vitamin grape and fruit punch; and Energy strawberry kiwi drink enhancers); and
- *How* (by viewing and relying on statements on those Products' labels that they were "Naturally Flavored" or contained "Natural Flavor with Other Natural Flavors," when they do not).

ECF No. 11 at 13. Plaintiff clarifies that she used the defined term "Products" in alleging that she reviewed and relied upon the Product labels prior to her purchase, meaning that she reviewed each of the defined flavors in making her purchase. ECF No. 11 at 12. Plaintiff also argues that she purchased some of the Products, which she lists in her complaint, in reliance upon these false statements that she would have otherwise not purchased or paid more for. ECF No. 11 at 13.

Here, Plaintiff asserts conduct grounded in fraud, alleging that Defendant misrepresented the Products were naturally flavored when they actually contained artificial flavoring. Plaintiff has satisfied Rule 9(b). Plaintiff identifies the allegedly misleading statement: "naturally flavored" on the cereal bars Products and "natural flavor with other natural flavors" on the water enhancer Products; the speaker:

Defendant; the location: the Products' labels for sale in a Kroger store in Magnolia, Texas; the time: prior to purchase on August 18, 2023; as discussed more in depth above, how the statements were false or misleading, namely that Plaintiff believed she purchased Products that were naturally flavored, but the Products had an artificial flavoring; and why she relied on the false statement: as a mother and teacher, she seeks to avoid artificial flavors and ingredients in the food she purchases for her family and even paid a premium for naturally flavored food. ECF No. 1 ¶¶ 18, 19, 20, 21, 22, 50, 51, 52. *See Click v. Gen. Motors LLC*, No. 2:18-CV-455, 2020 WL 3118577, at *5-6 (S.D. Tex. Mar. 27, 2020) (denying motion to dismiss on heightened pleading finding allegations that GM was the source of the advertisements and plaintiffs' reliance on those statements before their purchase were sufficient to support an inference that GM's representations contradicted what it knew, plaintiffs' alleged reliance, and that they would not have purchased if they had known of the defect, meeting the heightened particularity requirements).

Defendant also briefly argues that Plaintiff has not met Rule 9(b)'s specificity requirements for the unpictured flavors of the Products, namely that she fails to plead any facts about the unpictured labels' contents—only that they have the same misrepresentation regarding flavoring and similar packaging. ECF No. 10 at 22. Plaintiff responds that Defendant fails to support this argument with authority, but even so, the allegations in the complaint are that each cereal bar states "naturally

flavored" and each water enhancer states "natural flavors with other natural flavors." ECF No. 11 at 14, n.2. Review of the complaint demonstrates that Plaintiff has sufficiently alleged the contents of the unpictured flavors' labels. ECF No. 1 ¶ 19 ("The cereal Products' front labels state that these Products are 'Naturally Flavored,' with these statements reinforced by depictions of fruits."); ¶ 20 ("the drink enhancer Products state on the front label that the Products are flavored with 'Natural Flavor With Other Natural Flavor,' again with stylized depictions of fruits."); ¶ 21 ("All of the Products contain an ingredient known as 'malic acid.'").

The motion to dismiss should be denied as Defendant's Rule 9(b) argument.

### C.    Plaintiff's Breach of Express Warranty Claims Concerning Cereal Bars Should Remain.

Defendant also contends that insofar as Plaintiff pleads breach of express warranty, Plaintiff has misrepresented that the Products' labels warranted that the Products contained only natural flavors, but the labels make no such warranty. ECF No. 10 at 19. The Court finds this argument is without merit as to the cereal bars but has merit as to the water enhancers.

"To prevail on a claim of breach of express warranty a plaintiff must prove: '1) an affirmation or promise made by the seller to the buyer [plaintiff]; 2) that such affirmation or promise was part of the basis for the bargain, e.g., that the buyer relied on such affirmation or promise in making the purchase; 3) that the goods failed to comply with the affirmation or promise; 4) that there was financial injury; and 5)

that the failure to comply was the proximate cause of the financial injury to the buyer.'" *Deeds v. Whirlpool Corp.*, No. CV H-15-2208, 2016 WL 6070552, at *4 (S.D. Tex. Oct. 17, 2016) (cleaned up) (quoting *Scott v. Dorel Juvenile Group, Inc.*, 456 F. App'x 450, 456 (5th Cir. Jan. 4, 2012) (quoting *Lindenmann v. Eli Lilly & Co.*, 816 F.2d 199, 202 (5th Cir. 1987)); TEX. BUS. & COMM. CODE § 2.313).

Based on the above analysis, the Court finds that Plaintiff sufficiently alleged that Defendant made an affirmation on the cereal bar products that they were naturally flavored, which Plaintiff relied upon in purchasing for a premium, but those Products contained artificial flavoring. *See SELVA KUMAR v. PANERA BREAD COMPANY.*, No. 4:21-CV-03779, 2024 WL 4281018, at *3 (S.D. Tex. Sept. 24, 2024) ("Here, Ashley's alleged assurance that the soup did not contain meat had 'the specificity of an affirmation of fact upon which a warranty could be predicated.' Kumar allegedly relied on Ashley's assurance that the soup was meat-free in purchasing the soup. Contrary to that warranty, the soup did contain meat, and Kumar suffered physical allergic reactions, emotional distress, and mental anguish because of having inadvertently consumed meat after relying on Ashley's assurances.") (cleaned up) (quoting *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 463 (Tex. App.—Dallas 1990), writ denied, 800 S.W.2d 853 (Tex. 1991)).

The motion to dismiss should be denied as to Defendant's express warranty argument for the cereal bars. The same cannot be said of the water enhancer products

because the allegedly misleading statement does not amount to an affirmation that these products did not contain artificial flavors. *See id.*; *see also Gedalia*, 53 F. Supp. 3d at 959–60; *Lozano*, 2024 WL 412606, at *11. The motion to dismiss should be granted as to the express warranty claims for the water enhancer products.

### D.    Plaintiff's Implied Warranty Claims Should Be Dismissed.

Defendant argues that Plaintiff failed to plead any elements of her implied warranty claim, specifically that she did not plead that the Products did not conform to any representations on their labels, have a special purpose, or that they are unfit for any purpose.[12] ECF No. 10 at 23. Plaintiff responds that she sufficiently alleged her claim for breach of implied warranty of merchantability because she "plainly alleged that the Products 'do not have the characteristics, uses, or benefits that were promised' because they do not conform to the flavoring claims made on the labels." ECF No. 11 at 29–30 (quoting ECF No. 1 ¶ 94). The agrees with Defendant.

To state a claim for breach of implied warranty of merchantability, Plaintiff must allege: "'(1) the defendant sold or leased a product to the plaintiff; (2) the product was unmerchantable; (3) the plaintiff notified the defendant of the breach; and (4) the plaintiff suffered injury.'" *Deeds*, 2016 WL 6070552, at *4–5 (quoting

---

[12] Plaintiff only responds to the first of Defendant's arguments, that the Products did not conform to the representations on their labels and appears to only pursue a claim for breach of implied warranty of merchantability. *See* ECF No. 11 at 29–30. Insofar as Plaintiff seeks relief for breach of other implied warranties, those claims should be dismissed for Plaintiff's failure to defend. *See Ardoin v. Stryker Corp.*, No. 4:18-CV-2192, 2019 WL 4933600, at *n.7 (S.D. Tex. Oct. 7, 2019).

*Helen of Troy, L.P. v. Zotos Corp*, 511 F. Supp. 2d 703, 724–25 (W.D. Tex. 2006) (quoting *Polaris Indus., Inc. v. McDonald*, 119 S.W. 3d 331, 336 (Tex. App.—Tyler 2003, no pet.), citing TEX. BUS. & COMM. CODE § 2.314 (non-exhaustive list of minimum requirements for a product to be merchantable), § 2.314 cmt. 13, § 2.607(c)(1), § 2.714, and § 2.715; *Plas-Tex., Inc. v. U.S. Steel Corp.*, 772 S.W. 2d 442, 444 (Tex. 1989) ("Proof of a defect is required in an action for breach of implied warranty of merchantability under section 2.314(b)(3))). For goods to be merchantable, the goods must:

> (1) pass without objection in the trade under the contract description; and (2) in the case of fungible goods, are of fair average quality within the description; and (3) are fit for the ordinary purposes for which such goods are used; and (4) run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved; and (5) are adequately contained, packaged, and labeled as the agreement may require; and (6) conform to the promises or affirmations of fact made on the container or label if any.

TEX. BUS. & COMM. CODE § 2.314(b).

The complaint only mentions breach of implied warranty in the heading of count three. ECF No. 1 at 15. The paragraphs following exclusively discuss Defendant's express warranty that the Products "contained only natural flavors." ECF No. 1 ¶ 91. Nowhere in her complaint does Plaintiff expressly state which of the six above elements the Products lack. *See* ECF No. 1. Now, Plaintiff seeks to clarify in her response that she seeks relief for breach of implied warranty because the Products fail to conform to the promises made on the label. ECF No. 11 at 29–

30.[13] But, a plain reading of Plaintiff's allegations show they clearly address only breach of express warranty, not breach of an implied warranty. *See* ECF No. 1 ¶¶ 92, 93, 94. Plaintiff never alleges that Defendant breached an implied warranty, much less explain how such a claim is supported by her well-pleaded factual allegations. *See* ECF No. 1.

Plaintiff fails to state a claim for breach of implied warranty and this claim should be dismissed.

### E.    Plaintiff's Unjust Enrichment Claims Should Remain.

Defendant argues that Plaintiff's unjust enrichment claims should be dismissed because Defendant did not unjustly receive money from Plaintiff by selling her the Products. Further, Plaintiff has an adequate remedy at law. ECF No. 10 at 23–24. The Court disagrees.

The Texas Supreme Court and Fifth Circuit have previously acknowledged unjust enrichment as an independent cause of action. *See Perales v. Bank of Am., N.A.*, Civil Action No. H-14-1791, 2014 WL 3907793, at *3 (S.D. Tex. Aug. 11, 2014) (citing *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010); *Elledge v. Friberg–Cooper Water Supply Corp.*, 240 S.W.3d 869, 870 (Tex. 2007); *Pepsi Corp. v. Galliford*, 254 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.]

---

[13] "[A] Complaint cannot be modified by a party's affidavit or by papers filed in response to a dispositive motion to dismiss or for summary judgment." *Riggins v. City of Indianola, Miss.*, No. 4:14-CV-110-DMB-JMV, 2015 WL 5568392, at *5 (N.D. Miss. Sept. 22, 2015) (quoting *Streit v. Bushnell,* 424 F.Supp.2d 633, 639 n. 3 (S.D.N.Y. 2006)).

2007, pet. denied)). Texas courts also have recognized unjust enrichment as a theory of recovery based on restitution. *See Davis v. Wells Fargo Bank, N.A.*, No. 6:11-CV-00047, 2014 WL 585403, at *2 (S.D. Tex. Feb. 14, 2014) (quoting *Protocol Techs., Inc. v. J.B. Grand Canyon Dairy, L.P.*, 406 S.W.3d 609, 614 (Tex. App.—Eastland 2013, no pet.)) ("Unjust enrichment is an implied-contract theory stating one should make restitution when it would be unjust to retain benefits received.").

Plaintiff sufficiently pled facts to support the reasonable inference that Defendant has obtained a benefit from her based on its alleged fraud. *See Click*, 2020 WL 3118577, at *1. Because Plaintiff has pled sufficient claims for misrepresentation under the DTPA and met the Rule 9(b) standard for the cereal bars, her allegations likewise are sufficient to support the reasonable inference of unjust enrichment. Plaintiff alleges that she paid a premium for the Products based on her desire to buy naturally flavored food for her family. ECF No. 1 ¶¶ 18, 51, 52. "Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers." ECF No. 1 ¶ 84. These allegations support the reasonable inference that Defendant obtained a financial benefit at Plaintiff's expense, warranting restitution. Plaintiff sufficiently pled a claim for unjust enrichment based on fraud.

Additionally, Plaintiff may plead alternative theories. Rule 8(a)(3) provides

that a pleading "may include relief in the alternative or different types of relief." FED. R. CIV. P. 8(a)(3). As a result, pleading alternative theories is an insufficient basis for granting a motion to dismiss. *See Gordon v. Sig Sauer, Inc.*, No. CV H-19-585, 2020 WL 6118466, at \*16 (S.D. Tex. Oct. 16, 2020) (denying motion to dismiss unjust enrichment claim because no showing why pleading in the alternative was impermissible).

Defendant's motion to dismiss Plaintiff's unjust enrichment claims should be denied. *Click*, 2020 WL 3118577, at \*10 (denying motion to dismiss unjust enrichment claim, considering plaintiff's right to plead in the alternative).

### F.    Plaintiff's Claims for Injunctive Relief Should Be Dismissed.

Defendant also argues that Plaintiff lacks standing to seek injunctive relief because she lacks future plans to purchase the Products, and even if she did have concrete plans to purchase the Products in the future, she is no longer deceived about the synthetic malic acid used to flavor the Products. ECF No. 10 at 24–25. Plaintiff responds that she pleads more than an "information injury," which would be remedied by her knowledge of the deception—instead, she has pleaded that Defendant charges a premium for the Products based on its misrepresentation that they are naturally flavored, demonstrating that she has an ongoing risk of economic harm. ECF No. 11 at 30. The Court agrees with Defendant.

"To have standing to sue for injunctive relief, a party must: (1) have suffered

34

an injury-in-fact; (2) establish a causal connection between the injury-in-fact and a complained-against defendant's conduct; (3) show that it is likely, not merely speculative, that a favorable decision will redress the injury-in-fact; and (4) 'demonstrate either continuing harm or a real and immediate threat of repeated injury in the future.'" *Brawley v. Bath & Body Works, LLC*, No. 3:18-CV-02098-S, 2019 WL 7945655, at *3 (N.D. Tex. Sept. 25, 2019) (quoting *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 342 (5th Cir. 2012) (quoting, among other authorities, *James v. City of Dallas*, 254 F.3d 551, 563 (5th Cir. 2001))). The parties dispute the fourth prong: continuing or future harm.

Similar allegations to those Plaintiff presented have been rejected as insufficient. In *Brawley*, plaintiffs brought a class-action consumer protection case against Bath and Body Works for defective candles, seeking injunctive relief. *Brawley*, 2019 WL 7945655, at *3. The *Brawley* court rejected the plaintiffs' allegations that they suffered continuing or future harm because, among other allegations, they would continue to buy and use the defective candles. The court noted that the plaintiffs needed to allege "more than a mere '"some day"' intention' to purchase or use the candles." *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992))).

Here, Plaintiff alleges that she suffers from the threat of ongoing and future economic harm because Defendant continues to charge a premium for the

Products—essentially arguing that she suffers future harm because she would continue to buy the Products at a premium. ECF No. 11 at 30. As in *Brawley*, this allegation is insufficient. *See Brawley*, 2019 WL 7945655, at *3.[14]

Thus, Plaintiff has failed to plead sufficient facts to show that she has standing to sue for injunctive relief and these claims should be dismissed.

### G.    Plaintiff Is Granted Leave To Amend Her Complaint.

In her response, Plaintiff requests leave to file an amended complaint if Defendant's motion to dismiss is granted. ECF No. 11 at 31. Rule 15(a) of the Federal Rules of Civil Procedure provides that a party may amend its pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served. FED. R. CIV. P. 15(a). After a responsive pleading is served, "a party may amend only with the opposing party's written consent or the court's leave." *Id.* Rule 15(a) instructs the Court to "freely give leave when justice so requires." *Id.* The rule "evinces a bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002)).

Here, amendment could possibly cure certain deficiencies. Plaintiff has not yet amended her complaint—therefore, the Court finds that amendment would not

---

[14] Given the substantively similar facts and arguments and persuasive in-circuit authority in the *Brawley* opinion, Plaintiff's citation to the unpublished California opinion, which relies entirely on non-binding, out-of-circuit authority, is unpersuasive. *See* ECF No. 11-1.

be futile and Plaintiff should be permitted an opportunity to amend her complaint. If the district judge adopts this recommendation, Plaintiff shall file her amended complaint within thirty (30) days of the order adopting.

## V. DEFENDANT'S MOTION TO STRIKE CLASS ALLEGATIONS SHOULD BE GRANTED.

"Either plaintiff or defendant may seek a ruling on the class claims; plaintiff may file a motion for class certification, and defendant may file a motion to dismiss or strike." *Lee v. Samsung Elecs. Am., Inc.*, No. 4:21-CV-1321, 2022 WL 4663878, at *2 (S.D. Tex. Sept. 21, 2022), *adopted*, No. 4:21-CV-01321, 2022 WL 6778991 (S.D. Tex. Oct. 11, 2022), *and adopted*, No. 4:21-CV-01321, 2022 WL 7757471 (S.D. Tex. Oct. 12, 2022). The Fifth Circuit has stated that "[w]here it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). "A defendant may move to strike class allegations prior to discovery in rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Delarue v. State Farm Lloyds*, No. 1:09-CV-237, 2010 WL 11530499, at *2 (E.D. Tex. Mar. 10, 2010).

Federal courts in this division have struck or dismissed class allegations on the pleadings, analyzing Rule 23's requirements for commonality and predominance. *See, e.g., Lee*, 2022 WL 4663878, at *2; *Gordon*, 2019 WL 4572799, at *22 (motion to strike, court struck common law fraud and consumer protection

claims based on false and misleading statements as to Texas class); *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1045 (S.D. Tex. 2016) (motion to strike, court struck Texas class breach of warranty claims); *Richardson v. Am. Home Shield of Texas, Inc.*, No. H-05-4029, 2006 WL 903721, at *7 (S.D. Tex. Apr. 7, 2006) (dismissing fraud claims under Rule 9(b), and finding plaintiffs failed to allege facts justifying class action treatment of fraud claims under Texas law).

A district court has broad discretion whether to certify a class; however, in exercising that discretion, it must rigorously analyze Rule 23's prerequisites. *Prantil v. Arkema Inc.*, 986 F.3d 570, 574 (5th Cir. 2021). When ruling on a motion to strike class allegations, the court examines but does not go beyond the pleadings in analyzing Rule 23's requirements.[15] *John*, 501 F.3d at 445.

In the Fifth Circuit, class issues fail to predominate when the plaintiff asserts fraud claims that require showing individualized reliance. *Lee*, 2022 WL 4663878,

---

[15] Rule 23 requires that several preliminary conditions be met before a proposed class may be certified. *Cole*, 484 F.3d at 723. Under Rule 23(a), the plaintiff must establish numerosity, commonality, typicality, and adequacy of class representation. *Id.* (citing FED. R. CIV. P. 23(a)). Rule 23(a)(2) requires that there are "questions of law or fact common to the class." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 606–08 & nn. 8, 9, 11, 13 (1997)). Once Rule 23(a) is satisfied, Plaintiff must also satisfy one of the three provisions of Rule 23(b). *Cole*, 484 F.3d at 723 (citing FED. R. CIV. P. 23(b)). Under Rule 23(b)(3), the plaintiff must demonstrate "both (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy." *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003). "The standard for certification imposed by Rule 23(b)(3) is . . . more demanding than the commonality requirement of Rule 23(a), and as such, mandates caution, particularly where "'individual stakes are high and disparities among class members great.'" *Id.* at 301–02 (quoting *Amchem Products*, 521 U.S. at 624).

at *4 (citing *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 415 (5th Cir. 2017) (common-law fraud claim should not have been certified because reliance requires individual inquires); *McManus v. Fleetwood Enterprises, Inc.*, 320 F.3d 545, 550 (5th Cir. 2003) (holding that the district court abused its discretion finding predominance because reliance requires individual inquires for fraudulent inducement and negligent misrepresentation claims); *Sandwich Chef of Texas, Inc. v. Reliance Nat. Indem. Ins. Co.*, 319 F.3d 205, 220–21 (5th Cir. 2003) (when plaintiffs knew the amounts being charged for insurance varied and agreed to pay the premiums, individual issues of reliance and causation preclude a finding of predominance); *Patterson v. Mobil Oil Corp.*, 241 F.3d 417, 419 (5th Cir. 2001) (holding that whether each class member suffered a RICO injury would require individual reliance inquires); *Perrone v. Gen. Motors Acceptance Corp.*, 232 F.3d 433, 439–40 (5th Cir. 2000) (when individual reliance is necessary to prove actual damages class action may not be certified); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 (5th Cir. 1996) (finding abuse of discretion in certifying class when district court refused to consider whether reliance on fraud would be an issue in individual trials)). "Texas law does not permit implied reliance." *Lee*, 2022 WL 4663878, at *4 (quoting *Richardson*, 2006 WL 9033721, at *7).

Plaintiff brings this class action "on behalf of all consumers in in the state of Texas who purchased the Products on or after August 18, 2019." ECF No. 1 ¶ 56.

Defendant moves to strike Plaintiff's class allegations, arguing that issues of individual reliance predominate. ECF No. 10 at 29. Defendant points out that the Products' labels contain different natural flavoring claims, different graphics, different additional ingredients such as vitamins, and different names. ECF No. 10 at 30. Further, "different consumers have different levels of desire for, and therefore different levels of interest in, background knowledge of, and valuations of, 'natural' foods." ECF No. 10 at 30. Plaintiff responds that the motion to strike is premature[16] and unfounded because individual reliance issues do not predominate. ECF No. 11 at 26. Plaintiff asserts that each of the Products have the same misrepresentation and feature similar packaging. ECF No. 11 at 26. Individual consumers are not choosing between one flavor over another based on representations specific to each flavor—instead, each flavor makes the same misrepresentation. ECF No. 11 at 27.

Plaintiff's arguments miss the mark: the issue is not how similar each of the Products are among the various flavors, but rather which of the Products' many elements the consumer relied upon in making a purchase. For example, it is unclear whether each individual consumer purchased the Product(s) because the Product was

---

[16] Plaintiff argues that this motion is premature, ECF No. 11 at 27–28, but the Court finds Plaintiff's cited cases are distinguishable. The Court finds the same distinction applies as explained in *Lee*: "some federal courts have denied motions to strike as premature because neither discovery had commenced nor a motion for class certification been filed; however, those cases are distinguishable because they presented a more limited class definition making class certification less unlikely on the pleadings." *See Lee*, 2022 WL 4663878, at *3 (citing *Delarue*, 2010 WL 11530499, at *2–4 (concluding that a motion to strike class allegations is premature in a bad faith insurance case limited to a Texas class)).

naturally flavored or contained caffeine or vitamins, because of brand loyalty to Kroger, because the consumer had a coupon, and so on. In Plaintiff's case, we only know that she purchased the Products based on their natural flavoring because she alleged as much. ECF No. 1 ¶ 18.

Plaintiff's claims are not appropriate for class treatment. *See Lee*, 2023 WL 4362885, at *6 (finding individual issues of reliance predominated because "[a]s the class is currently defined, Plaintiffs include purchasers who relied on their independent research, prior favorable experiences, preferred color schemes, and/or were aware of the acrylic coating and selected the "black stainless steel" finish anyway."). Defendant's motion to strike the class claims should be granted.

## VI.    DEFENDANT'S MOTION TO ABATE IS GRANTED.

Defendant argues that the Court should abate this lawsuit because Plaintiff has failed to comply with the DTPA's pre-suit notice requirements by failing to articulate a dollar amount for each category of damages sought. ECF No. 10 at 31. Plaintiff responds that her demand for "actual and compensatory damages of $250,000, which figure is inclusive of her attorney's fees and costs" is sufficient. ECF No. 11 at 28. Because the Court recommends that Plaintiff be permitted to amend and certain of her DTPA claims be dismissed without prejudice, the Court takes up Defendant's motion to abate.

"As a prerequisite to filing a suit seeking damages," section 17.505 of the DTPA requires that "a consumer shall give written notice to the person at least 60 days before filing the suit advising the person in *reasonable detail* of the consumer's specific complaint and *the amount of economic damages, damages for mental anguish, and expenses, including attorneys' fees*, if any, reasonably incurred by the consumer in asserting the claim against the defendant." TEX. BUS. & COM. CODE § 17.505(a) (emphasis added). Plaintiff is required to comply with all the substantive provisions of the DTPA, including its notice provision. *See Franklin*, 569 F. Supp. 3d at 482 (citing *Hines v. Hash*, 843 S.W.2d 464, 467 (Tex. 1992) ("The notice requirement of the DTPA is clearly mandatory . . . "). "This pre[-]suit notice requirement is intertwined with the substantive policy of encouraging settlement, making the requirement one of substantive law that applies in federal court." *Reed v. Real Estate Services of NY LLC*, No. H-21-CV-3713, 2022 WL 861508, at *1 (S.D. Tex. Mar. 23, 2022) (citing *Baber v. Edman*, 719 F.2d 122 (5th Cir. 1983); *Hines*, 843 S.W.2d at 469 ("The purpose of the [DTPA] notice provision is the same as that of the Medical Liability and Insurance Improvement Act: 'to discourage litigation and encourage settlements of consumer complaints.' ") (quoting *Jim Walter Homes, Inc. v. Valencia*, 690 S.W.2d 239, 242 (Tex. 1985)); *Bates v. Laminack*, 938 F. Supp. 2d 649, 669 (S.D. Tex. 2013) (applying the Deceptive Trade Practices Act pre-suit notice requirement)).

The DTPA's pre-suit notice requirements "have been extensively litigated, and the majority of cases" interpreting those statutes "apply a very low threshold." *Early v. Union Sec. Ins. Co.*, No. 1:23-CV-00098, 2023 WL 4936719, at *2 (E.D. Tex. Apr. 27, 2023) (citing *In re Cypress Tex. Lloyds*, 437 S.W.3d 1, 13 (Tex. App.—Corpus Christi–Edinburg 2011, no pet.) (collecting cases)). "A demand letter that fails to articulate a dollar amount for each category of damages sought does not meet the requirements of the DTPA. . . ." *Id.* at *3 (a pre-suit demand for $1.5 million that did not explain how much of that sum was for actual damages, mental anguish, and attorneys' fees was insufficient) (citing *In re Liberty Mut. Fire Ins. Co.*, No. 14-09-00876-CV, 2010 WL 1655492, at *5 (Tex. App.—Houston [14th Dist.] Apr. 27, 2010, no pet.) (mem. op.) (holding that a pre-suit demand for $1.2 million that did not specify dollar amounts for each category of damages sought failed to comply with either statute); *see also Greco v. Jones*, 38 F. Supp. 3d 790, 800–01 (N.D. Tex. 2014) (requiring the plaintiffs to serve notice in compliance with the DTPA by providing "the categories of damages sought" and "the amount of damages sought in each such category")); *see also Franklin*, 569 F. Supp. 3d at 482 (pre-suit demand that "failed to specify any amount of attorneys' fees" was insufficient). As such, Plaintiff's demand for $250,000—a lump sum made up of Plaintiff's actual and compensatory damages, attorney's fees, and costs, and not specified amounts—is insufficient.

43

Plaintiff's cited case is inapposite. In *Lester v. Logan*, the court found DTPA's pre-suit requirements met where the letter explained:

> The hay in question was the producing cause of my client's damages and loss. To date, his damages have been evaluated as follows. The thirteen bred cows that died as a result of the contaminated hay had a value of $9,100.00. He further has sustained the loss from the seven aborted calves in an amount estimated to be approximately one-half of the value of the cow or $350.00 per animal. According to his appraiser and his veterinarian, there is a question whether these cattle would rebreed and straighten up from the damage sustained to their system. However, Mr. Logan will accept the sum of $2,400.50 for the loss of the seven calves. He has sustained out-of-pocket expenses of $158.50 for veterinarian expenses, for running the tests and analyzing the causation for the death of the cattle and has incurred attorney's fees of $1,000.00 through the writing of this demand letter.

*Lester v. Logan*, 893 S.W.2d 570, 574 (Tex. App.—Corpus Christi–Edinburg 1994), writ denied, 907 S.W.2d 452 (Tex. 1995). Plaintiff's single sentence that "actual and compensatory damages of $250,000, which figure is inclusive of her attorney's fees and costs" is hardly comparable to the detailed explanatory paragraph above.

Accordingly, Defendant is entitled to have this action held in abeyance until Plaintiff complies with the DTPA's notice requirement. *See Reed*, 2022 WL 861508, at *1 (citing *Oppenheimer v. Prudential Secs. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (finding that the proper remedy for insufficient notice is abatement)).

## VII.   CONCLUSION

The Court recommends that:

1.   Defendant's motion to dismiss should be **GRANTED in part**, as follows:

     a.    Plaintiff's Water Enhancer DTPA Claims
     b.    Plaintiff's Water Enhancer Express Warranty Claims
     c.    Plaintiff's Implied Warranty Claims
     d.    Plaintiff's Claims for Injunctive Relief

2.    The motion to dismiss should be **DENIED** in all other respects.

3.    Defendant's motion to strike the class claims should be **GRANTED**,

In addition, the Court **ORDERS** the following:

4.    Defendant's motion to abate is **GRANTED**. ECF No. 10. Once the court rules on any objections, if any, this action is **ABATED** until sixty (60) days after the date Plaintiff provides Defendant with proper pre-suit notice as required under § 17.505(a).

5.    Further, if this recommendation is adopted, Plaintiff is **GRANTED** leave to amend. Her amended complaint, curing the defects in her complaint, shall be filed within fourteen (14) days after the abatement period ends.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error. *Quinn v. Guerrero*, 863 F.3d 353, 358 (5th Cir. 2017).**

Signed at Houston, Texas, on November 5, 2024.

*Dena Palermo*

_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**